**Ivor J. LEE II, Plaintiff,**

v.

**UNITED STATES of America, Defendant/Third Party Plaintiff,**

v.

**Thomas HOCKRAN, and Sulo Maynard Lahti Jr., Third Party Defendants.**

C.A. No. 92–162.

United States District Court, W.D. Pennsylvania.

Jan. 14, 1997.

William T. Jorden, Jorden & White, Meadville, PA, for Plaintiff & Third Party Defendants.

United States Attorney's Office, Pittsburgh, PA, for Defendant/Third Party Plaintiff.

Charles M. Flesch, Richard I. Miller, Richard L. Gilman, United States Dept. of Justice, Tax Division, Washington, DC, for Defendant/Third Party Plaintiff.

## OPINION

COHILL, District Judge.

This is an action filed by the plaintiff taxpayer, Ivor J. Lee, II, to recover a tax penalty assessed against him by the Internal Revenue Service ("IRS") of the United States of America, the defendant in the action. The government has impleaded Thomas Hockran and Sulo Maynard Lahti Jr. as third-party defendants.

The government has filed a motion *in limine* to exclude certain evidence that the plaintiff and the third-party defendants (collectively, the "taxpayers") intend to introduce at trial.

### I. *Background*

HLH Drilling, Inc., was incorporated under the laws of Pennsylvania in 1981. For all relevant time periods Lee, Hockran, and Lahti were shareholders of HLH. Each was an officer of the corporation and a member of its board of directors. In order to obtain operating funds HLH received a loan of $1 million and a working capital line of credit in the amount of $198,000 from First National Bank of Pennsylvania ("FNB"). The bank took a security interest in all of HLH's accounts receivables and acquired the right to set off against the corporation's various operating accounts at FNB to assure repayment of debts owed by HLH. Each of the taxpayers, along with their wives, personally guaranteed all monies lent and/or made available to HLH by FNB.

In late 1985 and early 1986 HLH began to experience financial difficulties and began to fall behind on its debts to FNB. Accordingly, FNB required HLH to enter a "lockbox" arrangement. All of HLH's income, including accounts receivable, was directed to the lockbox. This money was applied to various HLH accounts to cover checks written by the taxpayers, and to interest and principal due the bank on the outstanding loan and line of credit. HLH could not issue checks from its operating accounts without the consent of FNB.

In 1986, subsequent to the lockbox arrangement being put into effect, HLH's financial situation worsened. The situation was such that FNB would first satisfy HLH debts to FNB from the lockbox, and would then allow money to be used to cover HLH's operating expenses, one of which was HLH's federal employment taxes. Sometimes sufficient funds to satisfy these expenses did not exist. The taxpayers assert that the practical effect of the lockbox arrangement was that FNB became a preferred creditor over any other creditors, including the IRS.

The taxpayers assert that on several occasions they complained to FNB that the lockbox arrangement was preventing them from meeting their employment tax obligations. They further assert that FNB received independent corroboration of this fact when it received notice from the IRS on November 2, 1986, that HLH was delinquent for employment taxes. Moreover, FNB purportedly knew that HLH's checks made payable to the IRS to satisfy this levy "bounced." One of FNB's officers purportedly told Lee that "he saw no reason to pay the IRS in front of paying themselves, and that [FNB] would deal with the problem down the road if [it] had to." *Pl.'s Br.* at 6. All of these assertions shall be assumed to be true for the sake of resolving the government's motion.

In accordance with the aforementioned facts, it is undisputed that payments were made to creditors other than the IRS notwithstanding HLH's tax obligation.

## II. *Discussion*

### (i)

Employers are required to withhold from the wages of their employees' income and social security taxes, and to hold such taxes in trust for the United States. The government is required to credit employees for taxes withheld irrespective of whether or not they are paid by the employer. *In re Ribs–R–Us, Inc.*, 828 F.2d 199, 200. Accordingly, the Internal Revenue Code ("IRC") allows the IRS to assess a penalty for non-remittance of employment taxes against "an officer or employee of a corporation" who was "under a duty to" account for, collect, and/or pay of the taxes and who "willfully" failed to perform such duties. 26 U.S.C. §§ 6671 and 6672; *In re Ribs–R–Us, Inc.*, 828 F.2d 199, 200 (3d Cir.1987).

Pursuant to section 6672, the IRS imposed a 100% penalty against the taxpayers for unpaid trust fund taxes which were withheld from the wages of HLH employees, but not remitted to the IRS for the eleven tax periods beginning January 1, 1986, and ending September 30, 1988. The IRS determined that the taxpayers were "responsible persons," as they were all required to collect, truthfully account for, and pay over the employment (payroll or trust fund) taxes withheld from the wages of HLH. Additionally, the IRS determined that taxpayers had "willfully" failed to ensure that the taxes which had been withheld from the employees were remitted to the IRS.

The taxpayers have paid the penalty and bring this action to recover the payment. At trial they intend to introduce evidence that because of the lockbox arrangement (a) FNB, and not the taxpayers, was the "responsible person" as defined by the statute and case law, and (b) that the taxpayers did not "willfully" omit to remit the taxes in question to the IRS. In short, they argue that it was FNB's fault that the taxes were not remitted ("bank defense"). The government has moved, *in limine*, to exclude any evidence relating to the bank defense from being introduced into evidence. It asserts that this has no basis in law, and accordingly, is irrelevant. Alternatively, to the extent such evidence is relevant, it argues that it is unfairly prejudicial, and should be excluded.

Because this motion in limine goes to the heart of the issue here, and is thus akin to a motion for summary judgment, this Court shall resolve any doubts as to the existence of a genuine issue of fact against the moving party. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982).

Evidence which is not relevant is not admissible. Fed.R.Evid. 402. The government asserts that, notwithstanding the lockbox arrangement, the taxpayers are still liable for the penalty, and that accordingly, any evidence relating to the lockbox arrangement is irrelevant and inadmissible.

### (ii)

The government asserts that the taxpayers were responsible persons pursuant to the IRC. The taxpayers disagree. More than one person can be a "responsible person" for a given employer. *Quattrone Accountants, Inc. v. Internal Revenue Service*, 895 F.2d 921, 926 (3d Cir.1990). If such is the case, liability is joint and several. *Id.* Responsibility is a "matter of status, duty or authority, not knowledge." *Greenberg v. United States*, 46 F.3d 239, 243 (3d Cir.1994). "While the responsible person must have sig-

nificant control over the corporation's finances, exclusive control is not necessary." *Id.*

■ The following are factors that are appropriate to consider when determining whether an individual is a responsible person:

1. The ability to sign checks on the corporation's bank accounts;

2. The identity of the individual or individuals who signed the corporation's quarterly Form 941 tax returns during the tax quarters in question, as well as other tax returns of the corporation;

3. The identity of the corporation's officers, directors and stockholders;

4. The identity of the individual or individuals who hired and fired employees;

5. The individual or individuals who had control of the financial affairs of the corporation on a day-to-day basis, and/or who made decisions or participated in making decision as to disbursement of funds and payments to creditors;

6. The contents of the corporate by-laws;

7. The identity of the individual or individuals in charge of the firm's financial affairs generally. *Id.*

■ The taxpayers do not dispute that under this standard they would normally qualify as responsible persons; rather, they argue that because of the lockbox arrangement with FNB, they did not have control of the HLH's finances. Accordingly, they conclude that FNB was the only responsible person.

The government argues that responsible persons cannot delegate away their statutory responsibility by agreeing to lockbox arrangements. They cite to *Kalb v. United States,* 505 F.2d 506 (2d Cir.1974) for this proposition. In *Kalb,* plaintiffs asserted that a delinquent company's bank controlled its finances and prevented them from paying the withholding taxes even though the company had so directed. The court rejected the notion that the financing arrangement relieved the plaintiffs' statutory responsibility.

The government also points to *Mortenson v. United States,* 910 F.Supp. 1325 (N.D.Ill. 1995), in which the court granted the government's motion *in limine* excluding evidence pertaining to a financial agreement between a lender and the company. In *Mortenson,* the plaintiffs asserted that they were not liable because the lender refused to approve payment of taxes even though it approved payment of current operating expenses. The court held that the arrangement between the lender and company did not negate the plaintiff's status as a responsible person under the statute, and therefore held that any such evidence was irrelevant.

The taxpayers attempt to distinguish *Kalb* and *Mortenson* by noting that in these cases, the plaintiffs voluntarily entered into the financing agreement. They argue that instantly, FNB required them to enter into the lockbox agreement with FNB. Additionally, they note that unlike institutions in *Kalb* and *Mortenson,* FNB is a secured creditor. They do not, however, explain the significance of the second distinction. Whether a bank holding a lockbox agreement is a secured, unsecured creditor, or not a creditor at all, is irrelevant to the determination of who is a responsible person under the statute. With respect to the taxpayers' assertion that FNB "required" them to enter into the lockbox agreement, such was not the case. Even to the extent the taxpayers were required to enter into the agreement in order to keep HLH afloat, they could have chosen to stop operating the business. This may seem to be a harsh alternative; however, the duty to pay employment taxes that have been withheld is a statutory one, and cannot be delegated away by a financing agreement. As the government notes, to hold otherwise would force the government into becoming an unwilling partner in an enterprise of questionable finances at the whim of the taxpayers. Indeed, who knows how many floundering companies might choose the lockbox technique in order to attempt to keep operating if the law so allowed. Accordingly, we reject the reasoning of *United States v. Vaccarella,* 735 F.Supp. 1421 (S.D.Ind.1990) which held that the "bank defense" could serve to do away with

an individual's status as a responsible person under the statute.

### (iii)

The next prong that the government must prove is that the taxpayers "willfully" withheld payment of the taxes in question. Again, the taxpayers assert that because of the lockbox agreement, their actions were not willful.

A willful decision under section 6672 is defined as a "voluntary conscious and intentional decision to prefer other creditors over the Government." *Greenberg,* 46 F.3d at 244. "A responsible person acts willfully if he pays other creditors in preference to the IRS knowing that taxes are due. An evil motive or bad purpose is not required." *Id.* "It is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern—the government cannot be made an unwilling partner in a floundering business." *Collins v. United States,* 848 F.2d 740, 741–42 (6th Cir.1988) (citing *Thibodeau v. United States,* 828 F.2d 1499, 1506 (11th Cir.1987)).

The taxpayers rely, again, on the bank defense to argue that their actions were not willful. However:

> To permit corporate officers to escape liability under section 6672 by entering into agreements which prefer other creditors to the government would defeat the entire purpose of the statute.... [W]ithholding taxes are held in trust. We cannot imagine that in any context a trustee could avoid his obligations be entering into an agreement by which funds entrusted to him are used to pay his other obligations.

*Kalb,* 505 F.2d at 510.

We agree with the reasoning in *Kalb,* and thus respectfully disagree with the decision in *Rykoff v. United States,* 40 F.3d 305 (9th Cir.1994). In *Rykoff,* the court held that a responsible person did not act willfully because a bank which had loaned money to the corporation had taken control of the corporation's finances and ignored instructions to pay the taxes. The court relied, in part, on the fact that the bank had forced the resignation of the taxpayer from the corporation and

that the taxpayer had a written agreement with the bank that the taxes would be paid. These distinctions notwithstanding, we believe that *Rykoff* is incorrectly decided. Knowing that the taxes are due and that they are not being paid is enough. *Greenberg,* 46 F.3d at 244.

### III. *Conclusion*

For the foregoing reasons, the government's motion *in limine* to exclude evidence regarding the lockbox arrangement will be granted.