Harold SCHWINGER, Plaintiff,

v.

UNITED STATES of America, Defendant,

v.

Lester RUBIN, Counterclaim-Defendant.

No. 82 CV 1256.

United States District Court, E.D. New York.

Jan. 23, 1987.

Norman R. Berkowitz, New York City, for plaintiff.

Richard M. Prendergast, Trial Atty., Tax Div., U.S. Dep't of Justice, Washington, D.C., for defendant.

MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This civil tax case arises out of the operation of a hospital that filed a petition in bankruptcy on January 29, 1975. Dr. Harold Schwinger was the director of radiology and a member of the medical board of the Brooklyn Womens Hospital, Inc. He also sat on the Board of Trustees, served as its secretary, and was a member of its executive committee. During the second, third and fourth quarters of 1973, the fourth quarter of 1974 and the first quarter of 1975, the Hospital failed to remit to the United States the income and social security tax amounts it had withheld from its employees' paychecks. On September 21, 1981, the Secretary of the Treasury made an assessment of $295,337.30—the amount of the unpaid withholding taxes—against Schwinger. It acted pursuant to 26 U.S.C. § 6672, which provides, in relevant part:

(a) General Rule—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Plaintiff paid part of the amount assessed, and then commenced this proceeding to challenge his liability for the penalty. The United States filed a counterclaim for the unpaid balance.[1]

The Internal Revenue Code of 1954 requires employers to deduct social security and income taxes from wages paid to employees. *See* 26 U.S.C. § 3102(a) (social security tax); *id.* § 3402(a) (income tax). The deducted amounts, which are withheld from paychecks, are held by the employer as a special trust fund for the benefit of the United States, *see id.* § 7501, and must be paid to the government on a quarterly basis, *see* 26 C.F.R. § 31.6011(a)–4.

■ If the employer fails to make the required payments, section 6672 provides an alternative method for collecting the withheld taxes: the government may assess a penalty, equal to the full amount of the unpaid tax, against a person responsible for paying over the money who willfully fails to do so. The penalty provision reflects a congressional judgment that because amounts withheld from employee salaries are "treated as a trust fund ... persons responsible for their paying over should be individually liable, as well as the corporation, for their diversion." *Spivak v. United States*, 370 F.2d 612, 615 (2d Cir.), *cert. denied*, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967). The assessment of the tax creates a prima facie case of liability, *see Lesser v. United States*, 368 F.2d 306, 310 (2d Cir.1966), and the person against whom the penalty is levied bears the burden of establishing by a preponderance of the evidence that at least one of the two elements of section 6672 liability does not exist, *see id.*

The two requirements are: 1) that the plaintiff was under a duty to collect, account for, and pay over the taxes; and 2) that plaintiff's failure to do these things was willful. Both parties seek summary judgment on both issues. Plaintiff also seeks an award of costs.

## I. Section 6672

### A. "Responsible Person"

■ A "responsible person" in the context of withholding tax payment liability is one "with power and responsibility within the corporate structure for seeing that the [withheld] taxes ... are remitted to the Government.... This duty is generally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds." *Monday v. United*

---

1. Defendant also filed a counterclaim against Lester Rubin, who had served as administrator and executive director of the hospital. Rubin is not a party to the instant motions.

*States,* 421 F.2d 1210, 1214–15 (7th Cir.) (citations omitted), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). "[D]ay to day control is ... unnecessary for a finding of responsibility," *Copperman v. United States,* 78–2 U.S.T.C. ¶ 9579, at 84,861 (E.D.N.Y.1978), but " ' "duty" under § 6672 must be viewed in light of his power to compel or prohibit the allocation of corporate funds,' " *Pototzky v. United States,* 8 Cl.Ct. 308, 85–1 U.S. T.C. ¶ 9438, at 88,212 (1985) (quoting *Godfrey v. United States,* 748 F.2d 1568, 1576 (Fed.Cir.1984)). Responsibility has been described as depending on "whether the person had control of the disbursements of the taxpayer, that is, whether 'he had the final word as to what bills should or should not be paid and when,' " *Anderson v. United States,* 561 F.2d 162, 165 (8th Cir.1977) (quoting *Wilson v. United States,* 250 F.2d 312, 316 (9th Cir.1958)), but "final" in this context indicates significant rather than exclusive control, *Alioto v. United States,* 593 F.Supp. 1402, 1408 (N.D.Cal.1984); *see Totaro v. United States,* 533 F.Supp. 71, 73 (W.D.N.Y.1981), *aff'd,* 697 F.2d 298 (2d Cir. 1982).

> The critical consideration is whether there exists a sufficient nexus between the plaintiff and the delinquent corporation's financial operation to warrant a finding that the plaintiff participated in decisions concerning the payment of creditors and disbursal of funds and thus had authority to determine whether the United States or other creditors would be paid.

*Gold v. United States,* 506 F.Supp. 473, 478 (E.D.N.Y.) (citations omitted), *aff'd,* 671 F.2d 492 (2d Cir.1981).

> The ... following specific facts may be relied upon in determining whether persons are responsible for payment of taxes withheld from wages of employees: (1) identity of officers, directors and shareholders of the corporation; (2) duties of the officer as outlined by the corporate by-laws; (3) ability of the individual to sign checks of the corporation; (4) identity of the individuals who were in control of the financial affairs of the corporation; (5) identity of the individuals who hired and fired employees.

*Silberberg v. United States,* 524 F.Supp. 744, 747 (E.D.N.Y.1981).

█ It is undisputed in this case that Schwinger held positions on several entities responsible for managing the hospital. The holding of corporate office alone, however, does not make an individual a "responsible person." *See Pototzky, supra,* 8 Cl.Ct. 315, 85–1 U.S.T.C. at 88,211; *see also In the Matter of Brahm,* 52 B.R. 606, 85–2 U.S.T.C. ¶ 9708 at 89,923 (M.D.Fla.1985) (corporate president not a "responsible person"). Similarly, the authority to sign checks on behalf of the employer, "without more, is a weak pillar on which to rest a liability determination ..." *Barrett v. United States,* 580 F.2d 449, 453 (Ct.Cl. 1978).

Moreover, the government concedes, for purposes of its motion, that Schwinger did not actually sign any hospital checks and did not participate in the preparation, review or signing of the hospital's payroll tax returns or computations.

█ In these circumstances the Court cannot hold as a matter of law that plaintiff was a "responsible person" within the meaning of section 6672. It is unclear on the record before me the extent to which membership on the various boards and committees on which he served conferred on plaintiff the authority to manage the affairs of the hospital. The inference that the government would have the Court draw as a matter of law—that plaintiff's corporate offices and functions render him a "responsible person"—may be warranted as a matter of fact. In light, however, of plaintiff's contention that he had no involvement in the hospital's financial affairs and no input into decisions as to which creditors were to be paid, further development of the record is warranted, and summary judgment for the government on this issue is improper.

On the other hand, however, there is no absence of material fact issues such that summary judgment for plaintiff would be

warranted. It must be noted at the outset that plaintiff's lack of participation in the preparation of tax and payroll documents and the signing of checks is conceded by the government only for purposes of its motion. Thus, on defendant's motion for summary judgment, fact issues exist as to the extent, if any, of plaintiff's involvement in tax and payroll matters.

Moreover, even if it were agreed that plaintiff did not participate in the preparation of documents, substantial fact questions remain as to his involvement in spending decisions. It is undisputed that he served as secretary of the Board of Directors and sat on its executive committee. It is also undisputed that these bodies were charged with general responsibility for running the hospital and managing its business, and that they in fact addressed various issues arising from the hospital's financial difficulties. With so obvious a connection to the main decisionmaking units of the corporation, plaintiff clearly cannot, at least at this stage of the litigation, be said to have had no " 'responsibility and authority to avoid the default which constitutes a violation' " of section 6672. *Bolding v. United States*, 565 F.2d 663, 671 (Ct.Cl. 1977) (quoting *Scott v. United States*, 354 F.2d 292, 296 (Ct.Cl.1965)). There is a gap in the record before me as to who actually conducted the hospital's financial affairs and did the hiring and firing. Accordingly, further factfinding is in order to determine whether plaintiff was a "responsible person" in the context of payroll tax withholding obligations. Thus, because genuine issues of material fact remain to be decided, plaintiff's and defendant's motions for summary judgment on the issue of responsibility are denied.

B. *Willfullness*

Assuming for purposes of this discussion that plaintiff is a responsible person, both parties believe that they are entitled to summary judgment on the issue of willfull-

ness. It is well settled that although section 6672 has some characteristics of a penalty, the government need not show criminal or evil intent or motive on the part of the plaintiff. *See, e.g., Kalb v. United States*, 505 F.2d 506, 511 (2d Cir.1974) (no requirement that responsible person, to be willful, must have bad motive or specific intent to deprive government of revenue), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975); *Braden v. United States*, 442 F.2d 342, 344 (6th Cir.) (if plaintiff, knowing taxes are unpaid and having the power and responsibility to pay them, fails to do so, his conduct is willful notwithstanding lack of malice or wrongful purpose), *cert. denied*, 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971); *see also United States v. Newell*, 79-1 U.S.T.C. ¶ 9178, at 86,278 (S.D.Fla.1978) (because § 6672 is really "a collection device and not a true penalty, willfully merely means a voluntary, conscious and intentional act").

Accordingly, "[w]ilfulness in the context of this section means the voluntary, conscious and intentional act to prefer other creditors of the corporation over the United States." *Gold v. United States*, 506 F.Supp. 473, 479 (E.D.N.Y.), *aff'd*, 671 F.2d 492 (2d Cir.1981); *see Hornsby v. Internal Revenue Service*, 588 F.2d 952, 953 (5th Cir.1979) (willfulness shown if responsible person is aware that money owing to government for withholding taxes is being used for other corporate purposes). This rule holds true even if the expenditures are necessary to remain in business. *United States v. Hill*, 368 F.2d 617, 621 (5th Cir. 1966) ("The desire to continue in business is not justification for violating the trust imposed by law to pay taxes."); *Marker v. United States*, 73-2 U.S.T.C. ¶ 9688, at 82,-232 (E.D.Pa.1973) (intentional payment of creditors to remain in business nonetheless constitutes willful payment under § 6672).[2]

Willful conduct may also include a reckless disregard for obvious or known risks, *Kalb, supra*, 505 F.2d at 511; *Mon-*

---

**2.** Even the payment of net wages can constitute willful conduct if paid at a time when the corporation is delinquent in paying over its withhold-

ing taxes. *See Sorenson v. United States*, 521 F.2d 325, 328–29 (9th Cir.1975).

day, supra, 421 F.2d at 1215, or a failure to investigate or correct mismanagement after receiving notice that withholding taxes are not being paid over to the government, *Kalb, supra*, 505 F.2d at 511; *United States v. Leuschner*, 336 F.2d 246, 248 (9th Cir.1964); *Gold, supra*, 506 F.Supp. at 480. Mere negligence, however, will not suffice to render a failure to pay willful. *Kalb, supra*, 505 F.2d at 511; *Dudley v. United States*, 428 F.2d 1196, 1200 (9th Cir.1970). Thus, a responsible person can escape liability for the section 6672 penalty if he did not know of the risk that withholding amounts were not being remitted or if the failure to pay was the result of a mistake or accident.

On the undisputed facts of this case, and assuming plaintiff to be a responsible person, the failure to pay was willful within the meaning of the statute.[3] Plaintiff concedes that he knew at least as of October 31, 1973 that the hospital was delinquent in its withholding tax obligations. It was at a board meeting on that date that the trustees were informed that the hospital was insolvent; that a withholding tax debt of $226,000 existed, and that the next payroll could not be met.[4] By continuing to run the hospital and pay wages, pension contributions and vendors, plaintiff and the rest of the trustees (again, assuming them to be responsible persons) made a voluntary, conscious decision to prefer other creditors over the United States.

Plaintiff argues that he cannot be found to have willfully failed to make the payments because, as the government concedes for purposes of its motion, plaintiff believed: 1) that the hospital had complied with a payment schedule worked out with the Internal Revenue Service; and 2) that the delinquencies that had existed on October 31, 1973 had been paid off. This mistaken belief, however, does not relieve a responsible person of section 6672 liability. In *Teel v. United States*, 529 F.2d 903, 906 (9th Cir.1976), for example, plaintiffs incorrectly believed that their agreement with state tax authorities relieved them of their obligation to remit withheld federal taxes. The court held that a "mistaken belief on the part of the responsible person that the tax need not or cannot be paid over does not suffice to render the failure to pay nonwillful." *Id.*

The failure to inquire into the status of withholding taxes after learning of the delinquency constitutes the reckless disregard that meets the willfulness requirement. *See Sorenson v. United States*, 521 F.2d 325, 329 (9th Cir.1975) (plaintiff's "misapprehension or ignorance were largely self-imposed"; failure to inquire into withholding tax responsibilities constitutes "a reckless disregard for known risks [and] is 'willful' for purposes of § 6672"); *Internal Revenue Service v. Blais*, 612 F.Supp. 700, 711 (D.Mass.1985) (even if plaintiff unaware "that the taxes remained unpaid, at the least he knew that he did not know whether they had been paid and that he could easily find out by asking"; this constitutes reckless disregard).

■ A responsible person, knowing of the delinquency, has a duty to follow up; he cannot rely on others to fulfill section 6672 obligations. In *Mazo v. United States*, 591 F.2d 1151, 1157 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62

---

**3.** The issue of wilfulness is necessarily directed to the state of the responsible person's mind, a subjective determination. This determination is usually factual, and "if sufficiently controverted, would preclude the granting of a summary judgment on penalty liability," *Teel v. United States*, [529 F.2d 903, 905 (9th Cir.1976)]. However, as the court held in *Teel, supra*, evidence that the responsible person had knowledge of payments to other creditors after he was aware of the failure to pay withholding tax is sufficient for summary judgment on the question of willfulness. *See*

also *Kalb v. United States*, [505 F.2d 506, 511 (2d Cir.1974)].

*Mazo v. United States*, 591 F.2d 1151, 1157 (5th Cir.1979).

**4.** The government has assessed penalties for the second, third and fourth quarters of 1973. It is undisputed that plaintiff knew of the failure to pay at least as of October 31, 1973. The parties have not, however, addressed the issue whether plaintiff would be responsible for delinquencies accruing before that date. They are requested to do so by motion or at trial, as appropriate.

L.Ed.2d 54 (1979), for example, plaintiffs argued that the failure to pay was not willful because the company's controller had assured them that he would take care of the matter. The court disagreed:

> [O]nce they were aware of the liability to the government, they were under a duty to ensure that the taxes were paid before any payments were made to other creditors. If, after receiving actual notice, corporate officials could once again delegate their responsibility to subordinates, then repeated escape from liability would be possible ...

*Id.; see Leuschner, supra,* 336 F.2d at 248 (plaintiff knew taxes had not been paid, "[y]et he did absolutely nothing to see that this did not happen again ... [This] complete failure to do anything to see [that the taxes were paid] is ... as a matter of law, a 'voluntary, conscious and intentional' failure"). This is especially so when the responsible person is aware of prior mismanagement. *See Gold, supra,* 506 F.Supp. at 480 (reliance on representation of chief executive officer that he would comply with IRS payment schedule constituted reckless disregard where plaintiff had "actual knowledge and an intuition that the corporation was being mismanaged and yet did nothing to remedy the situation"); *Dougherty v. United States,* 327 F.Supp. 202, 205 (D.S.D.1971) (Plaintiffs "were on notice of the financial difficulties of the corporation and the prior lack of efficient management, and were because of this notice not entitled to continue to rely on others for the collection and payment of taxes."), *aff'd,* 471 F.2d 656 (8th Cir.1972).

Plaintiff here was aware of the delinquencies, but by his own admission he continued to rely on the hospital's executive director to make tax payments, and even as the hospital's fiscal difficulties mounted, he did not discuss or seek any information regarding the matter. Thus, even though plaintiff did not know that the payment schedule was not being met,[5] his failure to investigate or to correct mismanagement after having notice that withholding tax delinquencies existed constitutes willful conduct for purposes of section 6672. *Kalb, supra,* 506 F.2d at 511.[6] Accordingly, defendant's motion for summary judgment on the issue of willfulness is granted.

## II. Costs

Plaintiff seeks an award of fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. Because plaintiff is not, at least at this time, a "prevailing party," the motion is denied.

## III. Conclusion

The government's motion for summary judgment on the issue of willfulness is granted. The motions of both parties for summary judgment on the issue of responsibility is denied. Plaintiff's motion for fees and costs is denied. The parties shall appear before this Court on February 25, 1987 at 9:30 a.m. for a status conference and to set a date for a trial on the issue of plaintiff's alleged status as a responsible person.

SO ORDERED.

---

**5.** As the court in *Teel v. United States,* 529 F.2d 903, 905 (9th Cir.1976), pointed out, the court in *Kalb v. United States,* 505 F.2d 506, 511 (2d Cir.1974) rejected the government's argument that even if plaintiff lacked knowledge of nonpayment, he could be regarded as willful because responsible persons have a duty to investigate to see that payments are being made. This approach would have eviscerated the willfulness requirement and imposed liability for mere negligence. Once the responsible person is aware of the delinquency, however, failure to investigate rises to the level of reckless disregard, which is sufficient to establish the willfulness element of § 6672 liability. *See United States v. Leuschner,* 336 F.2d 246, 248 (9th Cir.1964). That is the precise situation in this case.

**6.** The conduct here presents the precise danger that led Congress to enact section 6672: the financing of failing businesses with funds held in trust for the United States. *See Mueller v. Nixon,* 470 F.2d 1348, 1351 (6th Cir.1972), *cert. denied,* 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1001 (1973).